BARKETT, Circuit Judge,
dissenting:
I cannot concur in the execution of someone whose conviction and sentencing I believe demonstrated a total absence of due process. Robert Conklin was convicted and sentenced to death after being denied any meaningful opportunity to present a defense either to his conviction or to his sentence. As I have noted in my dissent from the denial of Conklin’s 28 U.S.C. § 2254 petition for habeas corpus relief, see Conklin v. Schofield, 366 F.3d 1191, 1211 (11th Cir.2004) (Barkett, J., dissenting), no attorney could possibly have provided competent assistance under the onerous conditions demanded by the trial court. When Conklin first sought habeas relief from this Court, the majority conceded that his constitutional rights had been violated, as “the trial court acted unreasonably in denying Conklin the funds necessary to present an effective defense,” Conklin, 366 F.3d at 1209, but denied relief, explaining that “we cannot say that Conklin’s trial, as a whole, was fundamentally unfair and outside of the bounds of the Constitution.” Id. at 1210. I disagree. Under the circumstances in this case, I am compelled to conclude that Conklin’s trial was fundamentally unfair. Because Conklin did not receive a fair trial under our system of justice, he is entitled to a stay of execution and to habeas relief.
Conklin’s attorney was given only thirty-seven days to prepare an exceedingly complex capital case in which technical medical evidence and detailed expert testimony played a pivotal role. The trial court inexplicably denied repeated requests for more time to prepare for trial, denied Conklin *1285 the paltry sum of $500 with which to hire a medical expert,[1] and refused to give Conk-lin’s attorney additional time to prepare for the sentencing hearing, which followed on the heels of his conviction. The amazing rush to trial and denial of money for a defense expert when the whole case turned on the state’s medical expert’s testimony cannot possibly be deemed fair process.
Conklin, who was 5’7” and 150 pounds, admitted he killed George Crooks, who was 6’2” and 200 pounds. Conklin’s sole defense was that he did not intend to kill Crooks and did so in a struggle to protect himself from being raped. After Conklin killed Crooks, he dismembered the body in an attempt to dispose of it.[2] To prove that Conklin had the requisite intent to support a murder conviction, the state had to establish that some of the knife wounds on Crooks’ body had been inflicted before death. The only evidence against Crooks on this question was the testimony of Dr. Saleh Zaki, the state’s medical examiner. Although Dr. Zaki conceded on cross-examination that the wounds could have occurred after death, he had testified on direct examination that knife wounds to Crooks’ neck were inflicted “antemortem,” or before death. Having been denied the funds to hire a medical expert who would have testified affirmatively that the knife wounds occurred post-mortem rather than ante-mortem, thus countering Dr. Zaki’s direct testimony with that of another respected expert and amplifying the effect of his concession that the knife wounds could have been inflicted before death, Conklin could only argue Zaki’s ambiguity regarding this crucial issue.
Considering the unseemly haste to obtain a conviction in this case, it is not surprising that the state’s medical expert at trial, Dr. Zaki, has now come forward with an affidavit[3] saying that in his opinion, “Mr. Conklin did not intentionally set out to kill Mr. Crooks .... I saw none of the evidence that I have seen in many other cases in which I testified to indicate that this killing involved planning, intent, torture, or depravity.” This testimony, in addition to the affidavit of the independent medical examiner appointed by federal district court, Dr. Werner Spitz, who opines that all of the knife wounds on the body occurred after death, consistent with Conklin’s trial testimony,[4] should give any court .pause.
Without an independent medical expert to counter Dr. Zaki’s direct testimony at trial and focus on his contradictory testimony on cross-examination, and limited by the severe time constraints imposed by the district court, Conklin was unable to subject the prosecution’s case to “meaningful *1286 adversarial testing,” and did not receive a fair trial.[5] See United States v. Cronic, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984) (describing situations in which defense counsel may be considered per se ineffective). Under these circumstances, “the likelihood that any lawyer, even a fully competent one, could provide effective assistance [was] so small that a presumption of prejudice is appropriate ....” Id. at 659-60, 104 S.Ct. 2039.[6]
Furthermore, Conklin was also denied a fair sentencing hearing. Although the majority suggests that Conklin’s attorney made a reasonable “tactical” decision not to present any mitigating evidence at the sentencing phase, and that any available testimony would not have been helpful, the trial court’s refusal to grant counsel time to prepare for sentencing and refusal to provide funding for a psychiatric expert left Conklin’s attorney no reasonable alternatives to choose from. This hardly constitutes strategy. I would grant the request for a stay of execution and habeas relief.

. In a pre-trial motion, Conklin sought "funds not to exceed $2,500”for expert assistance. A later colloquy between Conklin's counsel and the court reveals that the court also rejected "a certain amount up to $500.”

. A jury convicted Conklin of murder, and at sentencing recommended the death sentence after finding that the murder was outrageously or wantonly vile, horrible, or inhuman and involved depravity of mind, an aggravating circumstance under Georgia law. Ga.Code Ann. § 17 — 10—30(b)(7).

. Filed in conjunction with Conklin's new state habeas petition.

.The district court appointed Dr. Spitz in connection with Conklin's habeas proceedings in federal district court. He prepared a report in 1995, after reviewing the autopsy report, photographs, and trial testimony. In May of 2005 he reviewed that information again and opined that "[t]he screwdriver wounds are antemortem (before death) while all of the knife wounds are post-mortem (after death),” and stated that the evidence he reviewed was consistent with a self-defense killing. Dr. Spitz provided an affidavit on July 5, 2005.

. Furthermore, although defense witness Chuck Desederio was prepared to testify that the victim had a volatile temper and a tendency for violence, Conklin's attorney failed to elicit this reputation testimony after the court excluded some of Desederio's other testimony.

. Although twenty-five days of trial preparation were found to be sufficient in Cronic, the fact that Conklin’s counsel had thirty-seven days to prepare does not take this case outside the realm of per se ineffectiveness. As I discuss in my previous dissent, Cronic requires us to consider "the circumstances surrounding [a defendant's] representation ...." Id. at 662, 104 S.Ct. 2039. It "does not stand for the proposition that twenty-five days or more of preparation may never trigger a presumption of ineffective assistance.” Conklin, 366 F.3d at 1213 (Barkett, ■ J., dissenting). Cronic was not a capital murder case, but a mail fraud case where the “underlying historical facts” were not in dispute and the attorney had only requested thirty days to prepare. Here, the events leading up to the killing were closely disputed, forensic evidence and expert testimony were critical, and the court denied repeated requests for continuances and funding. In short, it is a dramatic misreading of Cronic to suggest that the fact that Conklin’s counsel had more than twenty-five days to prepare outweighs all of the other circumstances that made effective representation impossible.